*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| *ALEXANDER G. BALDWIN,* ) | |
| ) | |
| *Plaintiff* ) | |
| ) | |
| *v.* ) | *Civil No. 07-46-P-H* |
| ) | |
| *JOHN W. BADER, et al.,* ) | |
| ) | |
| *Defendants* ) | |

*MEMORANDUM DECISION ON MOTION TO EXCLUDE*

Plaintiff Alexander G. Baldwin, a minority shareholder of WahlcoMetroflex, Inc. ("WMI"), seeks to exclude testimony of John. T. Gurley, the valuation expert of WMI shareholders and directors, defendants John W. Bader, Steven P. Boulet, Michael L. Brousseau, Scott F. Hall, Roger H. Poulin and John A. Powell.   *See* Motion To Exclude Testimony of Defendants' Valuation Expert, John T. Gurley[,] and [for] Related Relief ("Motion") (Docket No. 31) at 1; Complaint, etc. (Docket No. 1) ¶¶ 1-7.  He argues that Gurley's opinions should be excluded pursuant to *Daubert v. Merrell Dow Pharms., Inc*, 509 U.S. 579 (1933), *Kumho Tire v. Carmichael*, 526 U.S. 137 (1999), and Federal Rule of Evidence 702 on grounds that they are either unequivocally erroneous and/or unreliable.  *See* Motion at 4-5.  For the reasons that follow, the Motion is granted in part and denied in part.

## I.  Applicable Legal Standard

Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify

thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Under Rule 702, "it is the responsibility of the trial judge to ensure that an expert is sufficiently qualified to provide expert testimony that is relevant to the task at hand and to ensure that the testimony rests on a reliable basis."  *Beaudette v. Louisville Ladder, Inc*., 462 F.3d 22, 25 (1st Cir. 2006).  With respect to reliability:

In *Daubert,* the Supreme Court set forth four general guidelines for a trial judge to evaluate in considering whether expert testimony rests on an adequate foundation: (1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline.  However, these factors do not constitute a definitive checklist or test, and the question of admissibility must be tied to the facts of a particular case.

*Id.* (citations and internal quotation marks omitted); *see also, e.g., Zachar v. Lee*, 363 F.3d 70, 76 (1st Cir. 2004) ("The court's assessment of reliability is flexible, but an expert must vouchsafe the reliability of the data on which he relies and explain how the cumulation of that data was consistent with standards of the expert's profession.") (citation and internal quotation marks omitted).

As the First Circuit has observed, "*Daubert* does not require that the party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct."  *United States v. Mooney*, 315 F.3d 54, 63 (1st Cir. 2002) (citation and internal quotation marks omitted).  "It demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion."  *Id*. (citation and internal quotation marks omitted).  That said, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion

2

evidence which is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998) (citation and internal quotation marks omitted).

## II.  Analysis

The plaintiff seeks to exclude Gurley's testimony concerning his calculations of (i) the fair market value of WMI as of December 31, 2006 and (ii) the dilution of the plaintiff's interest in WMI as a result of share issuances in 2005 and 2007 on the basis that, even after Gurley corrected his calculations (via a supplemental designation) to account for errors pointed out to him at his deposition, he continued to make glaring, material errors.  *See* Motion at 8-13.  The defendants counter that the errors go to the weight, rather than the admissibility, of those opinions and that, in any event, Gurley acknowledges the fresh errors and corrects them (via an affidavit), mooting the Motion insofar as it concerns his testimony on these subjects.  *See* Defendants' Memorandum of Law in Opposition to Plaintiff's Motion To Exclude Testimony of Defendants' Valuation Expert, John T. Gurley, and [for] Related Relief ("Opposition") (Docket No. 42) at 8-10; Affidavit of John T. Gurley in Support of Defendants' Memorandum of Law in Opposition to Plaintiff's Motion To Exclude Testimony of Defendants' Valuation Expert, John T. Gurley, and [for] Related Relief ("Gurley Aff."), attached thereto, ¶¶ 9-22.  The plaintiff, unmollified, continues to press for the testimony's exclusion, arguing that Gurley's "erratic track record lies at the heart of the reliability issue.  After two attempts at an expert designation, he just cannot get it right."  Reply of Plaintiff to Defendants' Opposition to Motion To Exclude Testimony of Defendants' Valuation Expert, John T. Gurley, and [for] Related Relief ("Reply") (Docket No. 47) at 1-2.

Gurley's now-corrected mistakes do not suffice to undermine the reliability of his testimony. He made several inadvertent errors both in his initial calculations and when recalculating his figures for purposes of his supplemental designation – for example, in one instance, he corrected an error in the wrong place in his electronic worksheet, resulting in an understatement of adjusted net income. *See* Gurley Aff. ¶13; *see also generally* Letter dated November 30, 2007 from Ted Small to David C. Johnson, Esq., Exh. 3 to Motion; Gurley Aff. ¶¶ 9-22. These miscalculations go to the weight, not the admissibility, of his opinions. *See, e.g., United States v. Bonds*, 12 F.3d 540, 561 (6th Cir. 1993) ("Disputes about specific techniques used or the accuracy of the results generated go to the weight, not the admissibility[,] of the scientific evidence."); *Donatelli v. UnumProvident Corp.*, 350 F. Supp.2d 288, 292 n.4 (D. Me. 2004) ("UnumProvident's critique of mathematical errors contained in Dr. Fox's estimate of what Donatelli could have earned had he remained at UnumProvident goes to weight, not admissibility."); *Computer Assocs. Int'l v. Quest Software, Inc.*, 333 F. Supp.2d 688, 694-95 (N.D. Ill. 2004) (mathematical and typographical errors in expert's report, which he admitted at his deposition, went to weight, not admissibility). The Motion accordingly is denied insofar as it targets Gurley's testimony concerning (i) the fair market value of WMI as of December 31, 2006 and (ii) the dilution of the plaintiff's interest in WMI as a result of share issuances in 2005 and 2007.

The plaintiff moves to exclude Gurley's testimony on a third subject – the value of guaranties of WMI debt provided by the defendants in 2005 and 2007 – on the ground that it is not based on a valid methodology. *See* Motion at 13-20. I am persuaded that the plaintiff is correct.

To determine the value of the personal guaranties provided by the defendants in 2005 and 2007 to Androscoggin Savings Bank ("ASB") in connection with loans extended to WMI, Gurley determined that, as a result of WMI's financial circumstances at the time and the terms and conditions of the guaranties and ASB financing, the risk associated with the personal guaranties was tantamount to the risk undertaken by an equity investor. *See* Gurley Aff. ¶¶ 23, 27-30.  In reaching this conclusion, Gurley took into consideration, among other things, that (i) WMI was facing the possibility of a forced liquidation in the summer of 2005, (ii) it was by no means certain that its assets would exceed its liabilities then or in 2007, and (iii) the defendants' guaranties of all of WMI's obligations to ASB were absolute and unconditional. *See id*. ¶¶ 27-30.

Using standard equity-valuation methodologies, Gurley next calculated the cost to WMI of equity in the two relevant time periods (arriving at a full equity discount rate of 17.57 percent for WMI as of December 31, 2005 and 16.98 percent as of December 31, 2006), then deducted the borrowing cost, net of tax, that was paid to ASB, resulting in a guaranty fee rate for the 2005 guaranties of 12.14 percent through July 31, 2010 and 11.81 percent for the balance of the loan term and of 10.81 percent for the 2007 guaranties. *See id*. ¶¶ 35-42.  From there, he calculated the guaranty fee at the stated rates over the term of the ASB financing and determined the present value of this stream of revenue at the full equity rate to arrive at a value of $1,272,825 for the 2005 guaranties and $216,750 for the 2007 guaranties. *See id*. ¶ 43.

Gurley states that he relied on a leading treatise, VALUING SMALL BUSINESSES & PROFESSIONAL PRACTICES by Shannon P. Pratt, Robert F. Reilly and Robert P. Schweihs (3d ed.) ("VSBPP"), in determining and applying the appropriate methodology to value personal guaranties, and that his methodology also is fully supported by a publication of the Institute of

Business Appraisers ("IBA") titled ESSENTIAL[S] OF BUSINESS APPRAISAL: A COMPREHENSIVE

WORKSHOP – 8002B ("APPRAISAL ESSENTIALS").  *See id*. ¶¶ 24-25, 31.  He points out that the

IBA cautions business-valuation experts to be "careful when the long-term debt requires the

company owner(s)['] personal guaranty and/or pledge of personal assets.  Debt cost may be

equity or close to equity cost."  *Id*. ¶ 31 (quoting APPRAISAL ESSENTIALS, Exh. B thereto, at 72).

He also points out that the VSBPP states:

> An often overlooked component of the cost of debt for small businesses and
> professional practices is personal guarantees.  If an owner were to obtain a third-
> party guarantor on an arm's-length basis, there would be a charge for that service.
> There is not much data on this factor because few guarantees actually are arm's-
> length.  However it seems reasonable to recognize a premium of upwards of three
> percentage points to the face value interest rate if personal guarantees are
> required.

*Id*. ¶ 32 (quoting VSBPP, Exh. C thereto, at 220) (emphasis omitted).  He asserts that later in the

same text, the VSBPP's authors enumerate several factors that would mitigate the risk of a

personal guaranty – substantial down payment, short duration of the guaranty, protection by

covenants – and make a telling observation: "If the down payment is small, the length of the term

long, and protective covenants poor or absent, no rate may be high enough."  *Id*. ¶ 33 (quoting

VSBPP at 495).  He posits that this "closely summarizes the situation faced by WMI and the

Defendants in this case."  *Id*.  He explains that while, in this situation, the VSBPP indicates that

no rate may be high enough, he used the upper limit of the cost of equity to a company inasmuch

as, "[f]aced with a decision to borrow at a rate above the cost of equity or raise additional equity,

the reasonable choice would be to raise additional equity."  *Id*. ¶ 34.

Nonetheless, as the plaintiff's expert, Mark G. Filler, observes, the VSBPP sections to

which Gurley points do not describe a methodology of subtracting net borrowing cost from

equity cost to arrive at a guaranty fee figure; rather, they suggest that in normal circumstances, a

premium of at least three percentage points to the face-value interest rate is reasonable, with adjustments upward to account for certain enumerated increased risks. *See* Affidavit of Mark G. Filler in Support of Plaintiff's Reply to Defendants' Opposition to Motion To Exclude Defendants' Valuation Expert, John T. Gurley ("Filler Aff."), Exh. A to Reply, ¶ 5; VSBPP at 220, 494-95. The VSBPP accordingly does not support the methodology Gurley used to value the defendants' guaranties. In addition, while Gurley posits that WMI's and the defendants' circumstances approximated those in which the VSBPP suggests that no rate may be high enough (small down payment, long term, poor or absent protective covenants), *see* Gurley Aff. ¶ 33, the plaintiff adduces evidence that more than half of WMI's guaranteed debt was short-term, *see* Reply at 5-6; Filler Aff. ¶ 6, and points out that Gurley did not consider whether that debt was well-secured (as the plaintiff contends it was) – a factor that the VSBPP indicates should be taken into account, *see* Reply at 5-6; VSBPP at 495.

The IBA passage to which Gurley points does support application of his methodology (which the IBA describes as the "weighted average cost of capital," or WACC, method) for purposes of valuing personal guaranties in certain circumstances. *See* APPRAISAL ESSENTIALS at 72. Nonetheless, as the plaintiff observes, *see* Reply at 6, the text states that the WACC method is "applicable to medium-sized to larger companies[,]"APPRAISAL ESSENTIALS at 72. Per Filler, WMI is a small business. *See* Filler Aff. ¶ 4. The defendants adduce no evidence disputing that WMI is a small company or explain why valuation pursuant to the WACC method might be appropriate for small companies. In addition, as the plaintiff notes, *see* Reply at 6-7, the IBA indicates that debt cost may equal equity, or close to equity, when long-term debt is guaranteed, *see* APPRAISAL ESSENTIALS at 72 ("You must be careful when using the WACC when the long-term debt requires the company owner(s)['] personal guaranty and/or pledge of personal assets.

Debt cost may be equity or close to equity cost.").  The plaintiff adduces evidence that more than half of the guarantied debt was short-term debt based on review of WMI's audited 2006 financial statements.  *See* Filler Aff. ¶ 6.  Again, the defendants neither refute that evidence nor explain why use of the WACC method remained appropriate notwithstanding that fact.

The defendants defend Gurley's methodology on one other basis – that it emanates from his experience and training in business valuation and his understanding of the costs of capital and risk return.  *See* Opposition at 11-12.  However, Gurley testified at his deposition that the instant case is the only one in which he has been called upon to value personal guaranties and admitted that, in cases in which he had seen guaranty fees paid, he was not privy to the method by which those fees had been calculated.  *See* Deposition of John T. Gurley, Exh. 2 to Motion, at 160-62.  What is more, the plaintiff adduces the evidence of his expert, Filler, that in his thirty-five years as a certified public accountant, business-valuation expert and business consultant, he has never seen a guaranty fee calculated using the methodology proposed by Gurley or seen a treatise or other authority supporting Gurley's methodology for determining a guaranty fee.  *See* Filler Aff. ¶ 7.

Inasmuch as the defendants fall short of showing that Gurley's guaranty-valuation methodology is fairly supported by either of the authorities on which they rely (the VSBPP or the IBA materials) or by knowledge gleaned from Gurley's professional experience and training, they fail to carry their burden of demonstrating that Gurley's "conclusion has been arrived at in a scientifically sound and methodologically reliable fashion."  *Mooney*, 315 F.3d at 63 (citation

and internal quotation marks omitted).  His opinions regarding the value of the personal guaranties given in 2005 and 2007 therefore are excluded.[1]

The plaintiff asks that, to the extent Gurley's testimony is not stricken in its entirety, he be given an opportunity to redepose him on the surviving portions of his supplemental designation.  *See* Motion at 20.  He asserts that simple fairness requires he be given this opportunity inasmuch as the supplemental designation, which was served on the last day of discovery, contains material changes. *See id.*  He further requests that he be excused pursuant to Federal Rule of Civil Procedure 26(b)(4)(C) from having to compensate Gurley for time spent preparing for and attending a new deposition, asserting that after Gurley billed him $1,500 for time spent preparing for and attending a deposition at which the plaintiff pointed out to Gurley that he had made a number of errors, it would be manifestly unjust to expect him to pay any more of Gurley's costs.  *See id.* at 20-21; *see also* Fed. R. Civ. P. 26(b)(4)(C) ("Unless manifest injustice would result, the court must require that the party seeking discovery . . . pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (B)[.]").

The defendants do not oppose a new deposition of Gurley but argue that the plaintiff should not be excused from paying Gurley's additional costs, noting that inasmuch as (via the supplemental designation and the latest affidavit) Gurley merely responded to issues raised by the plaintiff's counsel, there is no mystery as to why and how he revised his opinions.  *See* Opposition at 15-16.

The plaintiff shall be permitted to redepose Gurley at a time convenient to both sides but not later than April 9, 2008.  I agree with the defendants that in these circumstances, in which their expert has merely made the changes suggested by the plaintiff's expert, the taking of a new

---

[1] The plaintiff seeks an order barring the defendants from providing any expert testimony (including from Gurley) regarding the subject matters in issue.  *See* Motion at 21-22.  This proposed wording is overbroad.  The Motion targets only Gurley's testimony.

deposition may be desirable but is not essential.  Hence, there is no manifest injustice in obliging

the plaintiff to bear Gurley's costs in connection with any new deposition.[2]

### III.  Conclusion

For the foregoing reasons, the plaintiff's motion is **GRANTED** with respect to Gurley's

testimony concerning the value of personal guaranties given by the defendants in 2005 and 2007

and otherwise **DENIED**.  The plaintiff is permitted to redepose Gurley at a time mutually

convenient to the parties but not later than April 9, 2008.  He shall be responsible for Gurley's

reasonable costs in preparing for and attending any new deposition.

Dated this 24th day of March 2008.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

---

[2] The plaintiff also seeks the opportunity to file a new motion to exclude, following the taking of a new deposition, if warranted.  *See* Motion at 22.  If the plaintiff decides such a motion is warranted, he may seek permission to file it at that time.  I will not bless it in advance.